IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARDO TOVAR, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 11 CV 9137 |
| | ) |
| v. | ) Hon. Charles R. Norgle |
| | ) |
| UNITED AIRLINES INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Pro se Plaintiff Ricardo Tovar ("Tovar") sues Defendant United Airlines Inc. ("United") for discrimination and harassment on the basis of national origin and sex, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as genetic information discrimination pursuant to the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff-1(a). Before the Court is United's motion for summary judgment. For the following reasons, summary judgment is granted in favor of United.

**I. BACKGROUND**

**A. Local Rule 56.1**

District courts have broad discretion "to require strict compliance with its local rules governing summary judgment." Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotation marks and citation omitted). United filed its motion for summary judgment on July 2, 2013 which included Local Rule 56.2 notice to Tovar, proceeding pro se, of the consequences of failing to respond to the motion. Pursuant to Local Rule 56.1, a litigant opposing a motion for summary judgment must file "(1) any opposing affidavits and other

materials referred to in Fed.R.Civ.P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's statement." N.D. Ill. LR 56.1(b). The Court ordered Tovar to file a response on or before July 24, 2013. On July 23, 2013, Tovar filed a motion for an extension of time to file his response because discovery motions remained pending before the Magistrate Judge. On July 25, 2013, the Court granted the motion for an extension of time in part, giving Tovar until August 13, 2013 to file his response. The same day, the Magistrate Judge denied Tovar's motion to extend discovery with the following exceptions: United was ordered to provide Tovar with a copy of his October 4, 2010 disciplinary letter and the identity and contact information of the flight attendants who complained about his aggressive behavior.

Notwithstanding his extension of time to file a response, Tovar failed to file any pleading in opposition to United's motion for summary judgment. Instead, on August 14, 2013—after the deadline to file his response—Plaintiff filed a pleading captioned, "Motion for to [sic] Reconsider an Extension to Respond to Summary Judgment," which was denied. It is well established that pro se litigants are required to comply with procedural rules. Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). Because Tovar failed to respond to the instant motion, all material facts set forth by Defendants are deemed admitted. N.D. Ill. LR 56.1(b)(3)(C); see also Parra v. Neal, 614 F.3d 635, 636 (7th Cir. 2010).

B. Facts

Tovar was hired by United for the position of Supervisor – Onboard Service in August 2009. Tovar reported to Rita Donovan ("Donovan"), Operations Manager, and Jackie Barnes ("Barnes"), Operations Manager. Donovan and Barnes reported to Anthony Nicastro ("Nicastro"), Manager – Onboard Service. United terminated Tovar's employment on January

14, 2011, following an investigation into his allegedly threatening, intimidating, and demeaning behavior towards coworkers.

In February 2010, Tovar was placed on a performance improvement plan because, during the previous three months, he had not been performing his assigned work in accordance with the goals and objectives for his position. In his first performance review with Barnes, conducted on March 2010, Tovar received an "unsatisfactory" rating for both accountability and performance. Barnes also addressed Tovar's communication problems with flight attendants between September 2009 and December 2009. In his mid-year review with Barnes, Tovar received an overall rating of "under performs." The review specifically provided that Tovar "had difficulties in understanding how to perform his duties." Def. United Airlines, Inc.'s Rule 56.1 Statement of Undisputed Material Facts ¶ 14.

On June 28, 2010, Pedro Arreza ("Arreza"), a flight attendant, filed a complaint regarding Tovar's behavior during a June 24, 2010 flight delay investigation. According to Arreza, Tovar told him that he should refuse the captain's decision to delay the flight or tell the captain that the flight could leave without the provisions they needed. Additionally, Arreza reported that he questioned Tovar's judgment because the Flight Attendant Operations Manual states that the captain makes the last decision. Arreza also stated that Tovar threatened to write him up and reflect this in his work history if he did not listen to him.

On August 30, 2010, Karen Brown, a flight attendant, filled out a supervisor feedback form, stating that Tovar was not courteous, caring and respectful to her and others on a flight.

Linda "Robbi" McMinn ("McMinn"), a flight attendant, complained that Tovar yelled at her on a flight on September 9, 2010. Tovar told her four times, "YOU HAVE TO RESPECT ME!" Def. United Airlines, Inc.'s Rule 56.1 Statement of Undisputed Material Facts ¶ 17

(internal quotation marks and citation omitted) (emphasis in original). McMinn reported that although she told Tovar she "was uncomfortable being alone with him and for him to back away," he refused to back away from her. Id. (internal quotation marks and citation omitted). McMinn also complained that "in all [her] 43 years with United Airlines [she] never had a confrontation with her supervisor," and that this incident with Tovar was "incredibly horrible," "[she is] still upset about it," and "it is unbelievable that anything such as this could happen at United Airlines workplace." Id. (internal quotation marks and citation omitted) (alterations in original). Judy Steinberg, a fellow flight attendant, reported that she observed Tovar raising his voice to McMinn, telling her that she "needed to respect him," and that McMinn was shaken by Tovar's "bullying tactics." Id. ¶ 18 (internal quotation marks and citation omitted). Following the September 9, 2010 incident, Barnes flew with Tovar on his next flight to provide surveillance on his behavior.

On September 16, 2010, Carlton Donnell ("Donnell"), a flight attendant, submitted a flight attendant report, stating that he had a miscommunication with Tovar regarding a procedure in the Flight Attendant Operations Manual. Tovar told Donnell that he would tell him where to find the provision in the manual, but never followed up on the matter.

On September 17, 2010, another flight attendant, Cecelia Jordan ("Jordan"), filed a complaint against Tovar after she was penalized with a "did not fly" ("DNF") on her record. Jordan stated that after an emergency landing on September 4, 2010, Tovar advised her and her flying partners that they were released and given time off for their trips, and that he would contact each of them on September 5, 2010 to check how they were doing; but, she never heard from him. In response to Jordan's complaint, on September 23, 2010, Tovar complained to Barnes about discrimination and harassment, alleging that when Jordan met with her supervisor,

William Forte, regarding the DNF she made the statement, "I talked to those two Mexicans." Id. ¶ 21. Tovar, however, admitted in his deposition that he did not hear Jordan make this statement, nor any other discriminatory comments. Tovar learned of the alleged statement from Gabe Rinconeno ("Rinconeno"), who also worked the duty desk with him on September 4, 2010. Tovar also admitted that Rinconeno was not present when Jordan allegedly made the statement.

On September 26, 2010, Tovar met with Barnes regarding flight attendant complaints, including the complaints from Carlton, Jordan and McMinn. On September 29, 2010, Tovar met with Barnes and Nicastro to discuss the recent flight attendant complaints against him and his demeanor in handling situations. On October 10, 2010, Barnes issued a discipline letter to Tovar stating that he is "viewed as intimidating, demeaning, demanding and difficult." Id. ¶ 24 (internal quotation marks and citation omitted). United offered Tovar any support he felt was appropriate to help him handle situations better. Tovar "accepted ownership and committed to immediately correcting the communication issues . . . discussed." Id. (internal quotation marks and citation omitted). Tovar was also admonished that "[s]hould you be unwilling or unable to successfully perform all aspects of your role, you risk termination." Id. (internal quotation marks and citation omitted) (alteration in original).

The events leading to Tovar's termination culminated on November 10, 2010. During the morning shift, Tovar and Carol Van Tuyle ("Van Tuyle"), another Supervisor – Onboard Service, worked the duty desk. That afternoon, Donovan held a staff meeting and asked the supervisors whether a particular flight had been briefed. Van Tuyle took responsibility for failing to assign the briefing, and apologized for failing to tell Tovar that the briefing had to be conducted with special instructions. Tovar, by contrast, took no responsibility for the lack of

coverage for the briefing. Wendy Biliskov ("Biliskov"), another Supervisor – Onboard Service, said she had placed the instructions at the duty desk.

Following the meeting, Tovar went to Donovan's office because he did not want to be held responsible for the miscommunication about the briefing for which he claims he was not responsible. After his meeting with Donovan, Tovar went to Biliskov's cubicle. Tovar admits that he spoke firmly to Biliskov. On November 11, 2010, Biliskov submitted a complaint to Barnes, Donovan and Paula Kielas ("Kielas"), Operations Manager, stating that Tovar "forcibly expressed his feelings that [she] has purposely set him up to fail." Id. ¶ 28 (internal quotation marks and citation omitted) (alteration in original). According to Biliskov, Tovar followed her as she moved passed him into the aisle and began walking toward the lobby, and that she escaped from him into the women's restroom. She was very upset by the interaction.

On November 11, 2010, Tovar met with Nicastro and told him that he felt he was being blamed for things that were not his responsibility. Nicastro informed Tovar that he was not concerned about the missed briefing; but, rather, Tovar's inappropriate reaction and behavior towards Biliskov and Donovan. Tovar told Nicastro that he thought Donovan and Barnes were discriminating against him and treating Biliskov and Van Tuyle better than him based on his national origin and sex. Both Tovar and Biliskov were directed to write a report about the November 10, 2010 incident.

When Tovar returned to work on November 14, 2010, he was suspended with pay pending an investigation into the November 10, 2010 incident with Biliskov. The same day, Tovar submitted his statement about the incident.

Donovan sent a report to Barnes, dated November 16, 2010, regarding the events of November 10, 2010, stating, *inter alia*, that Tovar "stood in [her] doorway and just stared at

6

[her.]" Id. ¶ 26 (internal quotation marks and citation omitted) (alterations in original). Donovan reported that she "could tell he was angry by his facial expression," and that she "felt very uncomfortable at that time." Id. (internal quotation marks and citation omitted).

Tovar met with Sandy Tibbitts ("Tibbitts"), a human resources representative, and Barnes on December 1, 2010. Barnes informed Tovar that his performance was unacceptable and that he had unfinished projects on his desk. After Barnes left the meeting, Tibbitts asked Tovar about his complaint that Donovan singled him out at the November 10, 2010 staff meeting, and Kielas' reaction to the incident with Biliskov, wherein she entered Barnes' office and said to Tovar, "I can't believe that you made [Biliskov] cry . . . you were intimidating, you were abusive, and you attack[ed] her." Id. ¶ 29 (internal quotation marks and citation omitted) (second alteration in original). Tovar also discussed issues related to family leave and his belief that he had been discriminated against. Tibbitts advised Tovar to call the United hotline to make a complaint of harassment or discrimination.

Tovar did so on December 2, 2010; he complained of discrimination against Barnes and Donovan based on the comment that Jordan allegedly made about "two Mexicans in the office." Id. ¶ 36 (internal quotation marks and citation omitted). Tovar submitted a written statement, and also complained that Barnes discriminated against him based on his national origin when she stated, "[O]h, you must have a big family." Id. (internal quotation marks and citation omitted). Kevin Thomas ("Thomas"), a human resources representative, investigated the matter and asked Tovar questions regarding his complaint. On January 10, 2011, Tovar received a letter from Thomas, stating that none of his allegations were substantiated because none of the complaints related to a protected characteristic.

7

On December 9, 2010, following his suspension with pay, Tovar filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against United, alleging discrimination based on his national origin, genetic information, and sex.

On January 14, 2011, Tovar met with Nicastro and Tibbitts. Nicastro informed Tovar that his employment was terminated for displaying threatening and intimidating behavior towards coworkers and because of his intimidating and demeaning interactions with coworkers on November 10, 2010. Tovar appealed his termination decision to Jackie Nicholson ("Nicholson"), Managing Director – Domicile Performance. Nicholson upheld the termination decision.

On February 22, 2011, Tovar filed an amended EEOC charge, adding a claim for retaliation. On September 30, 2011, the EEOC issued a Notice of Right to Sue letter. Tovar initiated this action on December 23, 2011. United now moves for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Majors, 714 F.3d at 532 (citations omitted). But before the nonmoving party "can benefit from a favorable view of

evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors, 714 F.3d at 532-33 (quoting Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 646 (7th Cir. 2011)).

### B. Title VII Discrimination Claims

Tovar claims that United discriminated against him on the basis of his national origin and sex in violation of Title VII. Under Title VII it is unlawful for an employer to, *inter alia*, "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of sex or national origin. 42 U.S.C. § 2000e-2(a)(1). There are two ways of demonstrating a prima facie case of employment discrimination in violation of Title VII: the direct method of proof and the indirect method of proof. Collins v. Am. Red Cross, 715 F.3d 994, 999 (7th Cir. 2013) (citations omitted).

#### *1. The Direct Method of Proof*

The direct method of proof requires Tovar to provide direct or circumstantial evidence of the employer's discriminatory animus. Collins, 715 F.3d at 999 (citing Naficy v. Ill. Dep't of

9

Human Servs., 697 F.3d 504, 509 (7th Cir. 2012). Here, Tovar has no direct evidence of discrimination, i.e., an explicit admission by United that its termination decision was motivated by discrimination. See Diaz v. Kraft Foods Global, Inc., 653 F.3d 582, 587 (7th Cir. 2011). The Court must therefore determine whether—based on United's version of the facts, deemed admitted for purposes of the instant motion—there is sufficient circumstantial evidence, when viewed in the light most favorable to Tovar, to suggest discrimination. The Seventh Circuit recognizes three categories of circumstantial evidence: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." Id. (citing Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009)); see also Morgan v. SVT, LCC, 724 F.3d 990, 995-96 (7th Cir. 2013). "The circumstantial evidence a plaintiff presents must point directly to a discriminatory reason for the employer's action and be directly related to the employment decision." Dass v. Chi. Bd. of Educ., 675 F.3d 1060, 1071 (7th Cir. 2012) (internal quotation marks and citations omitted).

Tovar admitted in his deposition that he was never subjected to any overt discrimination or derogatory comments by his supervisors. Tovar nevertheless complained that in July 2010, Barnes said, "oh, you must have a big family" during their conversation relating to his request for leave. Def. United Airlines, Inc.'s Rule 56.1 Statement of Undisputed Material Facts ¶ 36 (internal quotation marks and citation omitted). Tovar admitted in his deposition that Barnes did not say anything about Mexicans having big families. Tovar also testified that on September 23, 2010, Barnes told him that his accent made it difficult for him to communicate effectively with flight attendants. Further, Tovar recounted a separate occasion, in June 2010, when Donavan

told him to "be a man about it" in response to a flight attendant situation. Id. ¶ 44 (internal quotation marks and citation omitted). However, such "[i]solated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 491 (7th Cir. 2007) (internal quotation marks and citation omitted). To raise an inference of discrimination, a particular remark must be "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." Id. (citing Merillat v. Metal Spinners, Inc., 470 F.3d 685, 694 (7th Cir. 2006)); see also Teruggi v. CIT Group/Capital Fin., Inc., 709 F.3d 654, 661 (7th Cir. 2013). Neither comment merits consideration as direct evidence. Each comment was made before the November 10, 2010 incident and corresponding investigation into Tovar's conduct, which culminated in his termination on January 14, 2011. Moreover, neither comment was made by a United decision maker, and there is no evidence that these comments influenced Nicastro and Tibbitts in terminating Tovar, or Nicholson in upholding the termination decision.

To the extent Tovar alleges that numerous female employees were treated more favorably than him, he fails to show that the comparators are "similar enough that any differences in their treatment cannot be attributed to other variables." Silverman v. Bd. of Educ. of Chi., 637 F.3d 729, 742 (7th Cir. 2011) (citing Senske v. Sybase, Inc., 588 F.3d 501, 510 (7th Cir. 2009)) (additional citations omitted). "[I]n disciplinary cases—in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000) (citing Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995)). Tovar fails to

present any evidence that the alleged comparators have a substantially similar history of threatening, intimidating, and demeaning behavior towards coworkers.

Rather, he offers a litany of complaints largely unrelated to his termination. For example, Tovar merely complains that Donovan chose Biliskov over him to be on a particular catering team and gave her instructions about briefing that were not given to him, that Donovan picked Connie Jones's flight attendant best practices recommendations instead of his, and that Biliskov, Van Tuyle, Sandy Sillis, and Nicole Caleo were not required to perform the minimum required flights to Asia in 2010. Additionally, Tovar complains that Audrey Allen ("Allen") was demoted by Donovan for an incident with a passenger, while he was terminated; yet, Tovar does not know how many complaints were filed against her, and admitted that it may have been only one. Tovar speculates that managers likely discriminated against Allen, an African-American woman. Tovar also complains that Van Tuyle did not receive a suspension for failing to conduct the November 10, 2010 briefing, to inform him that a briefing had to be conducted, or to assign that briefing to a supervisor. However, as Nicastro advised Tovar, management was concerned with his inappropriate reaction and behavior towards coworkers following the November 10, 2010 meeting, not the missed briefing. Tovar fails to identify a single United employee who was treated differently under comparable circumstances. Viewed as a whole, Tovar's circumstantial evidence simply does not amount to a "convincing mosaic" sufficient to support a reasonable inference that he was a victim of national origin and sex discrimination.

### 2. *The Indirect Method of Proof*

The indirect method requires Tovar to follow the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), burden-shifting framework. <u>Collins</u>, 715 F.3d at 999 (citing <u>Naficy</u>, 697 F.3d at 509). Under the <u>McDonnell Douglas</u> framework, Tovar must first establish a prima facie

case of employment discrimination: (1) that he is a member of a protected class; (2) that he met his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside of the protected class received more favorable treatment. Id. (citing Naficy, 697 F.3d at 511). If Tovar establishes prima facie discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Id. at 999-1000 (citing Naficy, 697 F.3d at 511). If United succeeds, the burden returns to Tovar to submit evidence showing that United's stated reason is pretextual. Id. at 1000 (citing Naficy, 697 F.3d at 511-12).

Fatal to his claims, Tovar cannot show that he met his employer's legitimate job expectations or, as discussed above, that he was treated differently from similarly situated employees. As to the former, the record evidence demonstrates that Tovar's job performance was undisputedly deficient, and he offers no evidence to show that his discipline was pretextual or applied discriminatorily. See Anders v. Waste Mgmt. of Wis., 463 F.3d 670, 676 (7th Cir. 2006) (affirming grant of summary judgment where plaintiff engaged in threatening behavior towards coworker). In the eleven months leading up to his termination, Tovar was placed on a performance improvement plan and received critical performance reviews, no less than five flight attendant complaints, and a discipline letter, stating that he is "viewed as intimidating, demeaning, demanding and difficult." Despite being given opportunities and support in correcting his communication and performance issues, on November 10, 2010, Tovar again engaged in intimidating and demeaning conduct when he confronted Donovan and Biliskov. Accordingly, Tovar fails to establish a prima facie case of discrimination.

## C. Retaliation Claim

Next, Tovar appears to allege that he was illegally discharged because he made the following complaints of discrimination: informal verbal complaints to Barnes on September 23, 2010 (alleging that flight attendant Jordan made a derogatory racial comment), to Nicastro on November 11, 2010 (alleging that Donovan and Barnes were singling him out and discriminated against him based upon Jordan's alleged comment), and to Tibbits on December 1, 2010 (asserting that he had been discriminated against); an official complaint against Barnes and Donovan to United's hotline on December 2, 2010; and an EEOC charge of discrimination on December 9, 2010. Under Title VII's antiretaliation provision, it is unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a retaliation claim, Tovar may proceed under either the direct or indirect method of proof. Cloe v. City of Indianapolis, 712 F.3d 1171, 1180 (7th Cir. 2013) (citing Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011)).

### *1. The Direct Method of Proof*

To prove retaliation under the direct method, Tovar must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. Majors, 714 F.3d at 537 (citing Nichols v. S. Ill. Univ.–Edwardsville, 510 F.3d 772, 784-85 (7th Cir. 2007)). The antiretaliation provision of Title VII requires a plaintiff to prove "but-for" causation, i.e., "that the unlawful retaliation would not have occurred in the absence of the

alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Here, Tovar cannot meet his burden to prove a causal connection between his alleged protected activity and his termination. The record is devoid of any direct evidence that United terminated Tovar because of his protected activity. Likewise, Tovar fails to present a "convincing mosaic" of circumstantial evidence sufficient to meet his burden. Mere knowledge of Tovar's complaints of discrimination does not, as a matter of law, establish causation. Garcia v. City of Chi., No. 12-3735, 2013 WL 5498101, at *2 (7th Cir. Oct. 4, 2013) (non-precedential order) (citing Johnson v. Sullivan, 945 F.2d 976, 981 (7th Cir. 1991)). Moreover, "an employee's complaint . . . does not immunize [him] from being subsequently disciplined or terminated for inappropriate workplace behavior." Kidwell v. Eisenhauer, 679 F.3d 957, 967 (7th Cir. 2012) (internal quotation marks and citation omitted) (alteration in original). Such is the case here.

When examined in context, the undisputed evidence shows that Tovar's own actions and "significant intervening" circumstances led to his progressive discipline and termination. See id. Tovar made his first complaint of discrimination against a flight attendant on September 23, 2010—after he had already been placed on a performance improvement plan, received critical performance reviews, and no less than five flight attendant complaints against him. Following meetings with Barnes and Nicastro on September 26, 2010 and September 29, 2010, to discuss the flight attendant complaints and his demeanor in handling situations, Tovar was issued a discipline letter on October 20, 2010, stating that he is "viewed as intimidating, demeaning, demanding and difficult," and that he had "accepted ownership and committed to immediately correcting the communication issues." Def. United Airlines, Inc.'s Rule 56.1 Statement of

15

Undisputed Material Facts ¶ 24. Only after the November 10, 2010 incidents with Donovan and Biliskov, which led to an investigation and ultimately Tovar's termination, did he make numerous additional complaints of discrimination against his supervisors, Donovan and Barnes. There is no evidence that Tovar's termination was based on his protected activity; rather, the decision was based on significant intervening events—namely, his own inappropriate workplace behavior. Thus, the timing of events in this case does not give rise to an inference of causation. See Kidwell, 679 F.3d at 967; see also Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 676 (7th Cir. 2011) (rejecting suspicious timing argument where evidence shows problematic behavior before the allegedly protected conduct). Additionally, to the extent Tovar relies on the same circumstantial evidence for his discrimination and retaliatory discharge claims, his evidentiary mosaic is insufficient to support an inference of a causal link. Thus, even viewing the evidence in the light most favorable to Tovar, he cannot establish that United retaliated against him under the direct method of proof.

### 2. *The Indirect Method of Proof*

To prove retaliation under the direct method, Tovar must show: (1) that he engaged in statutorily protected activity; (2) that he was meeting his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Majors, 714 F.3d at 537 (citing Nichols, 510 F.3d at 785). For the same reasons discussed above, Tovar cannot establish a prima facie case of retaliation because the undisputed evidence shows that he was not meeting United's legitimate expectations and that he has failed to identify a similarly situated comparator.

## D. Harassment Claims

Tovar also alleges that Jordan subjected him to a hostile work environment based upon his national origin and sex. To establish a hostile work environment under Title VII, Tovar must first show that his work environment "was both objectively and subjectively offensive—that is, 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Ellis, 650 F.3d at 647 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). In determining whether an environment is objectively hostile, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks and citation omitted). Additionally, "the conduct at issue must be severe or pervasive enough to cause psychological injury." Id. "[O]ne extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." Haugerud v. Amery Sch. Dist., 259 F.3d 678, 693 (7th Cir. 2001) (citing Smith v. Sheahan, 189 F.3d 529, 533-34 (7th Cir. 1999)). However, courts "will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating." Yancick v. Hanna Steel Corp., 653 F.3d 532, 544 (7th Cir. 2011) (citing McPhaul v. Bd. of Comm'rs of Madison Cnty., 226 F.3d 558, 567 (7th Cir. 2000)). Next, Tovar must show that the hostile conditions were because of his sex and national origin. Hall v. City of Chi., 713 F.3d 325, 330 (7th Cir. 2013). Finally, Tovar must show a basis for employer liability. Id.

Under the totality of the circumstances, the conduct alleged here does not amount to a sufficiently hostile work environment. "An objectively hostile work environment will not be

17

found 'where [m]ost of the conduct that forms the basis of [a plaintiff's] claim consists of derogatory statements made by supervisors or co-workers out of [his] hearing,' and the rest is 'isolated and not particularly severe.'" Whittaker v. N. Ill. Univ., 424 F.3d 640, 645 (7th Cir. 2005) (quoting Mannie v. Potter, 394 F.3d 977, 983 (7th Cir. 2005)) (additional citation omitted) (first and second alterations in original). Tovar claims that he was harassed by a flight attendant, Jordan, when she allegedly stated, "I talked to those two Mexicans." Def. United Airlines, Inc.'s Rule 56.1 Statement of Undisputed Material Facts ¶ 21 (internal quotation marks and citation omitted). However, Tovar admitted in his deposition that he never heard Jordan make this statement and she never made any discriminatory comments in his presence. Indeed, Tovar learned about this statement from his coworker, Rinconeno, and admitted that Rinconeno was not present when Jordan allegedly made the statement to her supervisor. Such offense "based purely on hearsay or rumor really is 'second hand'; it is less credible, and, for that reason and also because it is less confrontational, it is less wounding than offense based on hearing or seeing . . . and it is also more difficult for the employer to control." Yuknis v. First Student, Inc., 481 F.3d 552, 555-56 (7th Cir. 2007).

As for the comments that Barnes and Donovan made in Tovar's presence—namely, that he must have a big family, that his accent made it difficult for him to communicate effectively with flight attendants, and to "be a man about it"—these incidents are relatively isolated and insufficiently severe or pervasive to support a hostile work environment claim. See Ellis, 650 F.3d at 648-49. Moreover, there is no evidence that Tovar's coworkers or supervisors attempted to harm him or made any comments that made him feel physically threatened. Additionally, the Court notes that Tovar admitted in his deposition that Donovan's comment to "be a man about it," was not discrimination or harassment, which belies his claim that he perceived it to be hostile

or abusive. Finally, Tovar's vague allegations that Barnes and Donovan scrutinized his work, targeted him, and singled him out based on his national origin and sex are mere speculation unsupported by record evidence. Because Tovar fails to present conduct in the aggregate that meets the requirements of a hostile work environment, his claims fail as a matter of law.

### E. Genetic Information Discrimination Act Claim

Finally, Tovar alleges that United discriminated against him based on genetic information. Under GINA, it is unlawful for an employer to "discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). Genetic information is defined as "information about—(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." Id. § 2000ff(4)(A). Here, Tovar's claim is predicated on his disclosure, to Donovan, that his mother has diabetes. However, Tovar presents no evidence that Donovan's knowledge of his mother's diabetes was used by United in any of its employment decisions. Indeed, Tovar admitted in his deposition that he was given a leave of absence to visit his mother and was not denied any leave benefits requested. Moreover, there is no evidence that Nicastro and Tibbitts were aware that Tovar's mother has diabetes when they terminated Tovar. Tovar's genetic discrimination claim therefore fails as a matter of law. Because summary judgment is appropriate on all of Tovar's claims, the Court need not reach United's alternative argument that his complaint should be dismissed because he allegedly committed perjury during his deposition.

## III. CONCLUSION

For the foregoing reasons, United's motion is granted. Summary judgment is entered in favor of United on all of Tovar's claims.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 1, 2013